UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SANDRA LAMBERT BROCKINTON** | **CIVIL ACTION** |
| **VERSUS** | **NO:**     **24-2254** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION: "M" (4)** |

**REPORT AND RECOMMENDATION**

This is an action for judicial review of a final decision of the Commissioner of Social Security, pursuant to Title 42 United States Code § 405(g). The Commissioner denied Plaintiff Sandra Lambert Brockinton's ("Brockinton") claim filed for a period of Disability Insurance Benefits ("DIB") under the Title II of the Social Security Act, 42 U.S.C. § 423.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b), for the submission of Proposed Findings and Recommendations.

**I.**     **Background**

Ms. Brockinton is a female with a GED, who has past relevant work in sales and stock and maintenance. R. Doc. 16, Tr. 172. Brockinton filed her application for DIB on March 23, 2020, alleging disability beginning on March 12, 2020. *Id.*, Tr. 155-158. Her alleged disability is due to morphea, stroke, brain embolism, partial right-side paralysis, memory issues, cardiomyopathy, hypothyroidism, osteopenia, depression, neck pain disc issues, scoliosis, insomnia, asthma, hernia, spleen issues, and liver issues.[1] *Id.*, Tr. 171.

---

[1] The ALJ found that neither the stroke cardiomyopathy, hypothyroidism, osteopenia, cervical spine disc narrowing, headaches, gastritis and disability due to spleen issues. R. Doc. 16, Tr. 1228. Notably, he reached these conclusions after reviewing the medical records. *Id.* He also noted that there was a positive ANA titer in 2007 and 2021 which is an indicator of autoimmune disease but without evidence of vasculitis or lupus. *Id.* He also noted that Brockinton alleged disability due to "spleen issues" and "liver issues" but that the medical records do not indicate that she has been diagnosed with an impairment of her organs. *Id.* He noted that she mentioned to her consultative examiner that she had cysts in her liver and spleen but there are no medically documented symptoms clinical finding related to these allegations with no medically determinable liver or spleen impairment. *Id.*

Ms. Brockinton's claim was initially denied on March 2, 2021. R. Doc. 16, Tr. 104-108. Her claims were also denied on reconsideration on July 13, 2021. *Id.,* Tr. 115-118. Ms. Brockinton requested a hearing before an Administrative Law Judge ("ALJ"). *Id.*, Tr. 119-131. A hearing by telephone took place on March 9, 2022. Id., Tr. 38-74. The ALJ issued an unfavorable decision on May 16, 2022. *Id.*, Tr. 8-23. On September 27, 2022, the Appeals Council denied Ms. Brockinton's request for review. *Id.,* Tr. 1-3.

Ms. Brockinton then filed a complaint with this Court on November 23, 2022. R. Doc. 16-2, Tr. 1223. On September 18, 2023, the Court remanded the matter to the Social Security Administration to address the physical limitation identified by the state agency medical consultants, who opined that Ms. Brockinton had no severe physical impairments. *Id.* Pursuant to the remand order, the ALJ held a second hearing by telephone on March 19, 2024. *Id.*, Tr. 1260-1309. The ALJ then issued a partially favorable decision on May 22, 2024, finding Ms. Brockinton disabled beginning May 22, 2024, the date of the decision. *Id.*, Tr. 1220-1245.

The ALJ found Ms. Brockinton met the insured status requirements of the Social Security Act through December 31, 2024. R. Doc. 16-2, Finding 1, Tr. 1226. The ALJ found that Ms. Brockinton has not engaged in substantial gainful activity since March 12, 2020, the alleged onset date. *Id.,* Finding 2, Tr. 1226. The ALJ found that Ms. Brockinton suffers from the severe impairments of asthma, overweight, fibromyalgia, depressive and bipolar-related disorders, anxiety and obsessive-compulsive disorders, and trauma and stressor-related disorders. *Id.,* Finding 3, Tr. 1226.

However, the ALJ found that Ms. Brockinton does not have an impairment or combination of impairments that meets or medically equals the severity criteria of a listed impairment. R. Doc.

2

16-2, Finding 4, Tr. 1228.  He found that Ms. Brockinton's asthma was evaluated under listing 3.03 and that she did not meet the paragraph B requirement that she be hospitalized due to asthmatic complications.  *Id.,* Tr. 1228-1229.  The ALJ noted that listing 3.03 required at least three hospitalizations in a rolling 12-month period.  *Id.*

The ALJ found that Ms. Brockinton's fibromyalgia too cannot meet a listing because fibromyalgia is not a listed impairment.  R. Doc. 16-2, Finding 4, Tr. 1229.  The ALJ noted that no medical expert or consultant qualified to make medical equivalency findings had opined that her fibromyalgia medically equals a listing.  *Id.*

The ALJ also found that no listing exists to evaluate Ms. Brockinton's overweight status and that was there was no indication that her weight has crossed the obesity threshold at any period. R. Doc. 16-2, Finding 4, Tr. 1229.  The ALJ found that Ms. Brockinton's weight was considered when evaluating her ability to function and developing her residual functional capacity.  *Id.*

The ALJ further found that Ms. Brockinton's mental impairments neither singly nor in combination meet listing level 12.04, 12.06, or 12.15. R. Doc. 16-2, Finding 4, Tr. 1229.  In so doing, the ALJ determined that Ms. Brockinton has a mild limitation in understanding, remembering, or apply information.  *Id.*  To reach this finding, the ALJ went through her educational records and noted that her treatment notes indicate normal thought processes, normal memory, and normal fund of knowledge.  *Id.*

The ALJ determined that Ms. Brockinton was moderately limited in: (1) interacting with others; (2) concentrating, persisting, or maintaining pace; and (3) adapting or managing herself. R. Doc. 16-2, Finding 4, Tr. 1229-1230.  In so doing, the ALJ found that her mental impairments

do not cause at least two "marked" limitations or one "extreme" limitation, as required under paragraph B. *Id.*

The ALJ then considered the paragraph C requirement that there must be medically documented history of serious and persistent mental health impairment for least two years. R. Doc. 16-2, Finding 4, Tr. 1230. Paragraph C further requires that the claimant rely on medical treatment, mental health therapy, psychological support, or a highly structured setting on an ongoing basis to diminish the signs and symptoms of their mental disorder, and that the claimant achieve only marginal adjustment. *Id.* The ALJ noted that Ms. Brockinton's record does not establish that she has only marginal adjustment. *Id.* Therefore, the ALJ found that Ms. Brockinton's mental impairments did not meet the requirements of paragraph C. *Id.*

The ALJ found that Ms. Brockinton has the residual functional capacity to perform light work. R. Doc. 16-2, Finding 5, Tr. 1230. He further concluded however that she can occasionally climb ramps and stairs but can never climb ladders, ropes or scaffolds. *Id.* The ALJ also held that she must avoid unprotected heights and hazardous machinery, poor ventilation, concentrated exposure to extreme heat and extreme cold, and concentrated exposure to dust, fumes, gases odors other pollutants. *Id.* He held that Ms. Brockinton could perform simple, routine work with occasional interaction with the public, coworkers, and supervisors. *Id.* The ALJ further determined that Ms. Brockinton could adapt to occasional changes her work setting and handle work-related decision-making but should avoid fast-paced production work such as assembly line-type of work. *Id.*

The ALJ found that Ms. Brockinton is unable to perform any past relevant work. R. Doc. 16-2, Finding 6, Tr. 1242-1243. He noted that her past relevant work was as a retail salesclerk

and hardware salesperson. *Id.* He further accepted the vocational expert's testimony that an individual with limitations such as Ms. Brockinton's would not be able to perform the duties of her past work either as actually or generally performed. *Id.*

The ALJ noted that Ms. Brockinton was fifty years old and defined as an individual closely approaching advanced age on the alleged disability onset date. R. Doc. 16-2, Finding 7, Tr. 1243. The ALJ noted that Ms. Brockinton has a least a high school education and that the transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules direct a finding that she is not disabled. *Id.,* Findings 8-9, Tr. 1243.

The ALJ noted that given Ms. Brockinton's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she could perform work as a router, marker, and housekeeping cleaner. R. Doc. 16-2, Finding 10, Tr. 1243-1244. The ALJ noted that the vocation expert testified on matters not directly addressed in the Dictionary of Occupational Titles, including the social distinctions identified in Ms. Brockinton's residual functional capacity. *Id.*

The ALJ found that Brockinton has not been under a disability from March 12, 2020, through the date prior to the date of the decision of May 16, 2024. R. Doc. 16-2, Finding 11, Tr. 1244. However, the ALJ found that the Borderline Age Rule applies as of May 17, 2024, and that Ms. Brockinton is deemed disabled at Grid rule 202.06. *Id.,* Finding 12, Tr. 1244-1245. Therefore, the ALJ found on May 22, 2024, and that Ms. Brockinton has been under a disability beginning May 17, 2024. *Id.,* Finding 13, Tr. 1245.

On September 16, 2024, Ms. Brockinton filed a request for judicial review of the ALJ's adverse decision from May 17, 2024. R. Doc. 1 at 1. Brockinton advances her review based on

several grounds.  R. Doc. 23 at 1.  First, Ms. Brockinton alleges that remand is appropriate because the ALJ failed to adopt limitations related to her admittedly severe cervical impairment. *Id.* at 1-4.  See also R. Doc. 27 at 2-4.  Second, Ms. Brockinton seeks remand because the ALJ allegedly violated SSR 12-2p in assessing her severe fibromyalgia.  *Id.* at 4-9; *See also* R. Doc. 27 at 4-7.

The Commissioner contends that the ALJ's decision is based on substantial evidence.  R. Doc. 24 at 13. According to the Commissioner, the ALJ properly included all of Ms. Brockinton's credible limitations in the RFC finding.  *Id.* at 4-9.  The Commissioner also contends that the ALJ properly considered Ms. Brockinton's fibromyalgia, including alleged symptoms related to fibromyalgia.  *Id.* at 9-13.

## II.    Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether: (1) the final decision is supported by substantial evidence; and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence.  See *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).   The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner.  *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981).   If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.  *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). However, an ALJ's failure to apply the correct legal test constitutes a ground for reversal.  *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a

conclusion. *Ripley v. Chater,* 67 F.3d, 552, 555 (5th Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973)).

"However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians." *Franklin v. Soc. Sec. Admin.*, No. 12-2681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013) (Feldman, M.) (citing *Kent v. Schweiker,* 710 F.2d 110, 114 (3rd Cir. 1983)).

### III.   Analysis

#### A.   ALJ Consideration of limitations in RFC Cervical Disc Disease finding

Ms. Brockinton contends that the ALJ 's erred when she determined that her cervical disc disease was not a severe impairment.  R. Doc. 23.  Ms. Brockinton contends that the ALJ did not limit her ability to reach, handle, finger, move her head up or down, rotate her head, even though her cervical impairment is severe.  *Id*.

The Commissioner contends that the ALJ properly assessed Ms. Brockinton's RFC in accordance with the pertinent regulations, Social Security Rulings and case law including the objective medical evidence.  R. Doc. 24.  The Commissioner contends that contrary to Ms. Brockinton's assertion, the ALJ provided appropriate limitations to accommodate Brockinton's legitimate impairments.  *Id*.  The Commissioner contends that Ms. Brockinton has not presented

any evidence that establishes that additional limitation should be included in the RFC finding. *Id*. Further Commissioner noted that Ms. Brockinton failed to present evidence that establishes additional limitations should be included in the RFC. *Id*.

The RFC is an assessment of a claimant's ability to do work on a sustained basis in an ordinary work setting despite the claimant's impairments. *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam). The RFC assessment is based on "all of the relevant medical and other evidence," 20 C.F.R. § 416.945(a)(3), including, but not limited to: medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations, SSR 96-8p, 1996 WL 374184, at *5. "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citation omitted). "Determining a claimant's residual functioning capacity is the ALJ's responsibility, and he has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam) (citing *Ripley*, 67 F.3d at 557; *Holman v. Massanari*, 275 F.3d 43 (5th Cir. 2001)).

However, "[i]n determining a claimant's RFC, an ALJ may not—without medical experts' opinions—derive the applicant's RFC solely from evidence of his claimed medical conditions." *Cary G. T. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-1948, 2022 WL 954341, at *3 (N.D. Tex. Mar. 29, 2022) (citing *Ripley*, 67 F.3d at 557). The ALJ is not allowed to rely on her "own unsupported opinion of the limitations the applicant's medical conditions might present." Id. (citing *Ripley*, 67 F.3d at 557). "ALJs 'must be careful not to succumb to the temptation to play doctor' or make their own independent medical assessments." *Frank v. Barnhart*, 326 F.3d 618, 622 (5th

8

Cir. 2003) (per curiam) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). When determining a claimant's RFC, the ALJ is required to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe." 20 C.F.R. § 416.945(e). This is because symptoms from other impairments "may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone[.]" *Id.*

As for Brockinton's cervical spine, he noted that from April 2020, the records show some reversal of the normal cervical lordosis and mild disc space narrowing at C5-C6 and C6-C7, and to a lesser degree at C5-C6. R. Doc. 16-2. Tr. 1227. The ALJ additionally noted that on a CT scan from November 2021 again showed straightening and slight reversal or the usual cervical curve centered at C3-C4 and trace anterolisthesis at C2-C3 and C3-C4. *Id.* at. Tr. 1228. The ALJ likewise noted that these finding were reported to be "relatively mild degenerative changes which does not require surgical intervention. *Id.* The ALJ further noted that Brockinton is generally shown to have full range of motion in her cervical spine, albeit with complaints of subjective pain. *Id.* The ALJ did not evaluate her pain in connection with their cervical spine and reserved it for fibromyalgia.

The gist of the ALJ's finding is that because the records show she generally had full range of motion in her cervical spine and her vital signs were normal that no additional limitations should have been added to Brockinton's RFC. R. Doc. 16-2. The ALJ also discounted Brockinton's complaint of pain by correlating her pain with her vital signs.

However, the evidence shows that the ALJ's opinion only references six records from March 30, 2020 to April 7, 2021, two of which referenced no decrease in range of motion and

remaining records indicated that her neck was supple. See R. Doc. Tr. 305, 542, 591, 608, 852, 1232. A review of the record shows that her cervical range of motion remained normal from December 28, 2020, through July 8, 2021. *Id.*, Tr. 964, 913. The records also showed that her neck pain was chronic and that it was located in the anterior portion of her cervical spine and the presence of mild radiculopathy. *Id.*, Tr. 848.

However, beginning July 22, 2021, through November 3, 2021, she had limited range of motion according to the physical therapist's records. *See* R. Doc. 16, Tr. 456, 1097, 1132, 1161. The average number of degrees of motion that the cervical (cervical cranial – head and neck) spine can move is: Flexion -50 degrees, Extension- 80 degrees, right lateral flexion-45 degrees, Left lateral flexion- 45 degrees, Right rotation- 80 degrees, Left rotation- 80 degrees.

The record shows that in July 2021 her cervical flexion was 20/50, extension 10/80, lateral flexion on the right 15/45, lateral flexion on the left, 20/45, and right and left rotation 40/80. See Rec. doc. 16, 1097. On August 12, 2021, the medical records note that she decreased cervical range of motion. *Id.*, Tr. 1877. She continued to have limited range of motion on October 14, 2021. R. Doc. 17, Tr. 1746.

On November 16, 2021, the progress notes indicate that there were spasms, tenderness with palpation of neck muscles and bony tenderness present with decreased range of motion. *Id.*, Tr. 2091. The medical progress notes of December 16, 2021, indicate that Brockinton started physical therapy due to limitation of range of motion in her cervical spine through February 17, 2022. R. Doc. 17-1, 2032-2347.

Notably Brockinton's administrative hearing was on March 9, 2022. R. Doc. 16. Further given that the ALJ did not look at medical evidence after July 8, 2021, the Court is hard press to

10

find that the ALJ properly evaluated the range of motion limitations in Brockinton's cervical spine and its impact on her ability to work. Whether the restrictions in her range of motion in the cervical spine should have been deemed a limitation is a finding reserved for the ALJ. Given that there is no evidence that the ALJ considered all of the evidence record including the evidence from July 2021 through February 2022, the Court finds that the ALJ's opinion is not based on substantial evidence.

IV.     **Recommendation**

**IT IS RECOMMENDED** that the decision of the Administrative Law Judge be **REVERSED AND REMANDED for consideration of the full record of medical evidence.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. See Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996).[2]

New Orleans, Louisiana, this 23rd day of October 2025.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[2] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.